IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-00250-01-CR-W-ODS |
| ) | |
| CLEON D. WHITE, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant White's Motion to Suppress Evidence (doc #16). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On August 11, 2009, the Grand Jury returned a two count indictment against defendant Cleon D. White. Count One of the indictment charges that on September 3, 2008, defendant White knowingly possessed with the intent to distribute cocaine base. Count Two charges that on May 12, 2009, defendant White knowingly distributed cocaine base.

On October 15, 2009, an evidentiary hearing was held on defendant's motion to suppress. Defendant White was represented by Assistant Federal Public Defender Anita L. Burns. The Government was represented by Assistant United States Attorney K. Michael Warner. The Government called Officers Billy Von Wolf and Curtis C. Coppinger of the Kansas City, Missouri Police Department as witnesses. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On September 3, 2008, at approximately 12:35 p.m., officers with the Street Crimes Unit assisted in the execution of a narcotics-related state search warrant for a house at 805 Wabash, Kansas City, Missouri. (Tr. at 3-4) There were seven members of the Street Crimes Unit and two or three additional officers who were to secure the perimeter of the residence. (Tr. at 4) The search warrant was based on a confidential informant's purchase of cocaine at the house on August 26, 2008. (Tr. at 3) The search warrant authorized the seizure of cocaine, firearms, U.S. currency in close

proximity to narcotics, prerecorded Street Narcotics Unit buy money, narcotics paraphernalia, any documents related to drug trafficking and any documents indicating indicia of occupancy. (Tr. at 3)

2. As the officers were pulling onto the street and exiting their tactical van in front of the residence, one of the officers observed a party look out the front door of the residence and observe the officers as they were approaching the residence. (Tr. at 4) Given that the officers had been seen, the officers chose not to do a knock and announce, but rather to proceed with a no-knock entry. (Tr. at 4-5) When the officers arrived at the front door, they did not pause or wait, but rather announced "Police, search warrant," and forced the door open. (Tr. at 5) The tactical officers went into the residence to clear the residence of all persons and make the scene safe. (Tr. at 5)

3. Five people were in the kitchen area of the residence, including defendant White. (Tr. at 5) Two more persons were in a bedroom of the residence. (Tr. at 6) An additional person was found outside in front of the residence. (Tr. at 6) All eight people were quickly frisked, handcuffed and taken outside where they were seated on the driveway in front of the garage. (Tr. at 5-7, 18, 32-33) Each of the individuals were seated facing the street with their backs toward the garage door. (Tr. at 19) Officer Von Wolf testified that the occupants of the house were detained both for their safety and the officers' safety. (Tr. at 8)

4. Outside, each person was to be subjected to a more thorough frisk as well as identified and then entered into the computer for wants, warrants, missing persons, and things of that nature. (Tr. at 8, 40) Officer Von Wolf was the log officer. (Tr. at 7, 9) Officer Von Wolf was going down the line and gathering information as the individuals were being patted down. (Tr. at 9) Officer Von Wolf heard Officer Coppinger ask one of the individuals (defendant White) why he was moving around so much and if he was alright. (Tr. at 9) (Prior to Officer Coppinger, another officer had asked White why he was moving around so much and White had stopped for awhile.) (Tr. at 21) Officer Von Wolf looked up and observed White moving from side to side and making movements with his hands towards his waistband and buttocks area in a leaning back motion while seated on the driveway. (Tr. at 9-10, 21) Officer Von Wolf testified that when a thorough pat-down has not been conducted and an individual is making furtive movements, it catches the attention of the officers. (Tr. at 10)

5. Officer Coppinger went over to defendant White and had him stand up. (Tr. at 10, 44) Officer Coppinger testified that he was concerned because White could have been hiding a weapon that could have been used to harm the officers. (Tr. at 33) White did not cooperate with Officer Coppinger. (Tr. at 10) White was pulling away and refusing to obey Officer Coppinger's verbal commands. (Tr. at 10) Another officer helped Officer Coppinger walk White away from everyone else into the garage and held on to White as Officer Coppinger conducted a more thorough frisk of White. (Tr. at 11, 27, 33) Officer Coppinger testified that White was taken behind the other detainees, approximately five to six feet into the garage. (Tr. at 44-45) Officer Coppinger testified that White became disruptive (that is he was pulling away and telling the officers to get away from him) when Coppinger began frisking the area where he had observed White making the movements with his hands. (Tr. at 33) Officer Coppinger testified that if he told White to bend over, which he did not remember saying, it would have been to move his hands which were handcuffed

2

behind him so that Coppinger could have been able to feel his waistband. (Tr. at 50) While conducting the frisk of White's buttocks area, Officer Coppinger stated he felt a foreign object. (Tr. at 11, 34) Officer Coppinger testified that at that time, he did not know if it was a weapon or some other sort of contraband. (Tr. at 34) Officer Coppinger testified that White was clenching his buttocks muscles so that Coppinger could not feel what White had hidden. (Tr. at 34) Officer Coppinger testified that in his experience, it is quite common for narcotics traffickers to conceal narcotics and weapons in their buttocks area. (Tr. at 34-35)

6. Given the presence of the foreign object that Officer Coppinger had felt and defendant White's disruptive behavior, the officers placed White face down on the ground. (Tr. at 35) Officer Coppinger testified that the officers put White down onto his knees and then laid him down onto his stomach. (Tr. at 46) Officer Coppinger pulled the waistband of White's clothing away from his body and observed a clear plastic baggie in between his buttocks area. (Tr. at 11, 13, 35) Officer Coppinger told White to quit clenching his cheeks. (Tr. at 50) A clear plastic baggie containing a beige rock-like substance was retrieved from White's pants. (Tr. at 11, 35) The substance field tested positive for cocaine. (Tr. at 12, 35) The substance was later forensically tested and was determined to be 0.92 grams of crack cocaine. (Tr. at 12, 35)

7. Officer Coppinger testified that he knew defendant White based on a previous encounter. (Tr. at 30) Approximately two months prior to the execution of the search warrant, Officer Coppinger had been present where parties (including White) were detained following an undercover narcotics buy-bust operation at a Dairy Queen in Independence. (Tr. at 31) Officer Coppinger did not recall whether White had been arrested at that time, or merely detained. (Tr. at 31)

8. Lon Hunter, a person who was present during the execution of the search warrant, gave a statement to an investigator for the defense. (Tr. at 53-54; Defendant's Ex. 1) The report of the interview provides:

> Mr. Hunter recalled the events that occurred on the afternoon of 09-03-2008. After being detained and placed outside of the residence he indicated he felt the officers were "harassing everyone" but they seem to have a focus on Mr. White. Hunter said the officers "wanted him the badest."
>
> While outside, Hunter did not observe Mr. White acting in any manner that seemed to him to be out of the ordinary. According to Lon Hunter, White was not fidgeting nor did he appear nervous prior to being singled out for a search. Hunter said he observed several officers "body slam" Mr. White to the ground. In addition, he observed the officers pull down White's pants and boxers to below his buttocks exposing him to the other witnesses.

(Defendant's Ex. 1)[1]

---

[1]Based on the testimony of Officers Von Wolf and Coppinger, set forth at Fact Nos. 4 and 9, the Court does not give any weight to the statements made by Mr. Hunter.

3

9. Officer Von Wolf and Officer Coppinger testified that they saw no evidence that officers were particularly focused on defendant White or that White was being harassed. (Tr. at 12, 35-36) Officer Von Wolf and Officer Coppinger testified that there was no undue force used on White nor was White body slammed to the ground. (Tr. at 12, 36) Officer Von Wolf testified that Officer Coppinger did not pull down White's pants or expose his buttocks when he retrieved the baggie from White's pants. (Tr. at 12) Officer Coppinger testified that while White's pants would have been pulled slightly down to remove the baggie, they were not pulled over his buttocks and this occurred while White was face down on the ground with officers around him so that no one else could have observed any exposure of White. (Tr. at 36) Both Officer Von Wolf and Officer Coppinger testified that Coppinger did not use a flashlight to look down White's pants; there was sufficient lighting given that it was daytime, the garage door was open and the lights were on in the garage. (Tr. at 22, 38-39, 45)

10. Officer Von Wolf testified that a thorough pat-down of defendant White would have been conducted even if White had not drawn attention to himself by his movements. (Tr. at 13) White was merely taken out of order because of his movements. (Tr. at 13) Officer Coppinger also testified that all the parties were going to be asked to stand up for a more thorough frisk, given the initial frisk inside the residence is done quickly while the residence is being secured. (Tr. at 40) Officer Coppinger testified that the baggie containing narcotics would have been discovered at that time. (Tr. at 40-41)

11. Defendant White was placed under arrest for possession of a controlled substance. (Tr. at 13)

12. Officer Coppinger testified that after the baggie containing the narcotics had been recovered, defendant White proclaimed that the officers had missed it the last time. (Tr. at 39) Officer Coppinger understood the "last time" to mean the buy-bust encounter at the Dairy Queen in Independence. (Tr. at 39, 51)

## III. DISCUSSION

Defendant White seeks to suppress all evidence and all testimony relating to such evidence obtained during a search of defendant's person conducted on September 3, 2008, on the basis that such evidence was obtained in violation of defendant's rights under the Fourth Amendment. (Motion to Suppress Evidence at 1) In support of the motion, defendant argues that before frisking him, Officer Coppinger must have reasonably believed defendant to be engaged in criminal activity and to be armed and presently dangerous. (Id. at 3) According to defendant, Officer Von Wolf's report contains no specific facts relied on by Officer Coppinger that would support a reasonable belief that defendant was armed and dangerous or engaged in criminal activity. (Id.) Defendant further argues that during a lawful pat-down, an officer may only seize an object if the incriminating

4

character of the object is immediately identifiable. (Id.) The pat-down search did not reveal the identify of the object between defendant's buttocks. (Id. at 4)

Defendant White agrees that police have authority to detain occupants of premises while an authorized search is in progress. (Motion to Suppress Evidence at 2 (citing Michigan v. Summers, 452 U.S. 692, 704-05 (1981)) Further, the Supreme Court has found that the use of handcuffs is permissible to minimize the risk of harm to officers, especially when there is a need to detain multiple occupants. See Muehler v. Mena, 544 U.S. 93, 99-100 (2005). Police also have authority to make a limited search of an individual present during the execution of a search warrant as a self-protective measure. See Rivera v. United States, 928 F.2d 592, 606 (2nd Cir. 1991); Leveto v. Lapina, 2000 WL 331902, *13-14 (W.D. Pa. Feb. 5, 2000), aff'd, 258 F.3d 156 (3rd Cir. 2001). In Collier v. Locicero, 820 F. Supp. 673 (D. Conn. 1993), the court found:

> [T]he failure to conduct brief frisks during the execution of search warrants would seriously jeopardize the lives and safety of police officers. It is clear that police officers who enter a building to execute a search warrant expose themselves to the risk of assault by persons whom they encounter during the search. To permit police officers to reduce this risk, courts have recognized the officers' right to conduct brief frisks of all persons on the premises being searched. ... These frisks, though limited, serve the essential function of ensuring that police officers have an opportunity to discover concealed weapons. Given the obvious importance of uncovering such weapons, the courts have permitted police officers to frisk all occupants of premises being searched without regard to any particularized suspicion that the officers may have.

Id. at 681. Beyond this general authority to detain persons and make limited security searches, there must be some degree of particularized suspicion to justify further searches of individuals who are neither named in the warrant nor arrested as a consequence of the search. See Rivera, 928 F.2d at 606. Accord United States v. Nelson, 931 F. Supp. 194, 201 (W.D.N.Y. 1996)("Nelson's emergence from a basement window during the search also gave rise to a reasonable suspicion that he might be armed or attempting to remove contraband from the house, which further justified the search"), aff'd, 131 F.3d 132 (2nd Cir. 1997).

The record in this case establishes that on September 3, 2008, officers went to 805 Wabash, Kansas City, Missouri, to execute a search warrant. (See Fact No. 1, supra) The search warrant was

5

based on a confidential informant's purchases of cocaine at the house on August 26, 2008. (Id.) Persons inside the residence were quickly frisked, handcuffed and taken outside where they were seated while the residence was searched. (See Fact No. 3, supra) While seated on the driveway, defendant White was moving from side to side and making movements with his hands towards his waistband and buttocks area in a leaning back motion. (See Fact No. 4, supra) Officer Von Wolf testified that when a thorough pat-down has not been conducted and an individual is making furtive movements, it catches the attention of the officers. (Id.) Officer Coppinger testified that he was concerned because defendant White could have been hiding a weapon. (See Fact No. 5, supra) Officer Coppinger went over to White and had him stand up, but White would not cooperate with Officer Coppinger and was pulling away and refusing to obey Coppinger's verbal commands. (Id.) Another officer helped Officer Coppinger walk White away from everyone else in the garage and held on to White as Coppinger conducted a more thorough frisk of White. (Id.) Officer Coppinger testified that White pulled away and told the officers to get away from him when Coppinger began frisking the area where he had observed White making the movements with his hands. (Id.) While conducting the frisk of White's buttocks area, Officer Coppinger stated he felt a foreign object. (Id.) Officer Coppinger testified that at the time, he did not know if it was a weapon or some other sort of contraband. (Id.) Officer Coppinger testified that White was clenching his buttocks muscles so that Coppinger could not feel what White had hidden. (Id.) Officer Coppinger testified that in his experience, it is quite common for narcotics traffickers to conceal narcotics and weapons in their buttocks area. (Id.) Given the presence of the foreign object that Officer Coppinger had felt and White's disruptive behavior, the officers placed White face down on the ground and Officer Coppinger pulled the waistband of White's clothing away from his body and observed a plastic baggie. (See Fact No. 6, supra) The baggie was removed from White's pants. (Id.)

The Court finds that Officer Coppinger was justified in conducting the frisk of defendant White for safety reasons without regard to any particularized suspicion. However, defendant White's movements while seated in front of the garage and his disruptive behavior while Officer

Coppinger was attempting to conduct the frisk also gave rise to a reasonable suspicion that he might be armed or attempting to conceal contraband from the house, which further justified the search. Contrary to defendant's argument that the crack cocaine must be suppressed as the pat-down search did not reveal the identy of the object between defendant's buttocks, the Court finds that the pat-down search did not rule out that the object was a weapon. Therefore, Officer Coppinger was justified in searching further. It was not until Officer Coppinger saw the baggie that he most likely knew he was not dealing with a concealed weapon. At that point, Officer Coppinger certainly had a reasonable suspicion that whatever was inside a baggie clenched between defendant's buttocks was nevertheless illegal. Whether one considers the baggie to be in "plain view" or "plain touch,"[2] Officer Coppinger was justified in seizing it. There was no violation of defendant's constitutional rights.

IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant White's Motion to Suppress Evidence (doc #16).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                                 */s/ Sarah W. Hays*
                                                               SARAH W. HAYS
                                      UNITED STATES MAGISTRATE JUDGE

---

[2] As with contraband found in "plain view," officers may lawfully seize contraband they incidentally discover in "plain touch" during a Terry frisk. See United States v. Bustos-Torres, 396 F.3d 935, 944 (8th Cir.), cert. denied, 545 U.S. 1109 (2005).